## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

HARRISON FRANKLIN,
WAYNE HART, and
LOUIS DELPHIE,

                          Plaintiffs,

          v.                                                    Case No. 05-C-916

DAVID BETH, OFFICER ROGER,
NURSE DALE, CAPTAIN PRESTON,
HEALTH SERVICES UNIT, OFFICER SHIMKUS,
VISITING NURSE'S ASSOCIATION,
JOHN DOES 1-50, JANE DOES 1-50, and
SERGEANT JOHNSON,

                          Defendants.

_____

## DECISION AND ORDER
_____

          Plaintiffs Harrison Franklin, Wayne Hart and Louis Delphie lodged this joint *pro se* civil rights action pursuant to 42 U.S.C. § 1983 concerning events that occurred at the Kenosha County Jail. Plaintiffs Franklin and Hart have each paid the full filing fee of $250. Currently pending are plaintiffs Franklin and Delphie's petitions to proceed *in forma pauperis*.

          Pursuant to 28 U.S.C. § 1915(b)(1), the plaintiffs are each required to pay the statutory filing fee of $250.00 for this action.[1] If a prisoner does not have the money to pay the filing fee, he or she can request leave to proceed *in forma pauperis*. To proceed with an action *in forma pauperis*, the prisoner must complete a petition and affidavit to proceed *in forma*

---

[1]The plaintiffs filed their complaint prior to April 9, 2006, when the filing fee for civil actions brought in the Eastern District of Wisconsin increased from $250 to $350.

*pauperis* and return it to the court with a certified copy of the prisoner's trust account statement showing transactions for the prior six months. The court then assesses and, when funds exist, collects from the plaintiff at the time the action is filed an initial partial filing fee of 20% of the average monthly deposits to or the average monthly balance in the prisoner's trust account for the six-month period immediately preceding the filing of the complaint.[2]

As noted, plaintiffs Franklin and Hart paid the $250 filing fee for bringing this action. Accordingly, it is unnecessary for Franklin to proceed *in forma pauperis*. Thus, Franklin's motion to proceed *in forma pauperis* is denied.

Plaintiff Delphie has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint. By order dated February 9, 2006, Delphie was ordered to forward to the clerk of court by March 2, 2006 the sum of $17.36 as an initial partial filing fee in this action. However, in a February 16, 2006, letter to the court Delphie indicated that he would like to withdraw from this case. Based on his representations to the court, Delphie shall be dismissed from this action. Accordingly, his motion to proceed *in forma pauperis* is denied.

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may

---

[2]In no event will a prisoner be prohibited from bringing a civil action because he or she has no assets and no means by which to pay the initial partial filing fee. 28 U.S.C. § 1915(b)(4).

Case 2:05-cv-00916-RTR   Filed 05/19/06   Page 2 of 26   Document 11

be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." *Lindell v. McCallum*, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

A complaint, or portion thereof, should be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. See *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 [1957]). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, *Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen,* 395 U.S. 411, 421 (1969).

To state a claim for relief under 42 U.S.C. § 1983, the plaintiffs must allege: 1) that they were deprived of a right secured by the Constitution or laws of the United States; and 2) that the deprivation was visited upon them by a person acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's pro se

3

allegations, however inartfully pleaded, a liberal construction. See *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." This statement must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Conley*, 355 U.S. at 47); *see also Thomson v. Washington*, 362 F.3d 969, 970-71 (7th Cir. 2004) (no heightened pleading requirement for pro se prisoner civil rights complaint). Of course, if a complaint pleads facts that show that a plaintiff does not have a claim, the complaint should be dismissed "without further ado." *Thomson*, 362 F.3d at 970.

At the outset, the court notes that the plaintiffs seek to litigate this case as a class action. Under Federal Rule of Civil Procedure 23(a)(4), a named plaintiff must be able to provide the class with adequate representation. A critical factor in determining the adequacy of representation is the legal skill of those actually conducting the litigation. *Sec'y of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir. 1986) (en banc). To be sure, the plaintiffs' complaint demonstrates a fuller grasp of legal issues and greater attention to procedural requirements than shown by many inmates. Nonetheless, the plaintiffs make no assertion that they are schooled in the law. Indeed, they have indicated that they wish to obtain the assistance of "counsel that is experience in class action (sic), civil rights, medical reform/privacy and prison conditions litigation." (Complaint ¶44).

4

This case is similar to *Ethnic Awareness Organization v. Gagnon*, 568 F. Supp. 2d 1186 (E.D. Wis. 1983), where the court made a specific finding that the *pro se* president of an association of minority prisoners was intelligent and capable of protecting his own interests, but nonetheless declined to certify a class of minority prisoners because a serious tactical error on the president's part could prejudice the rights of his fellow inmates. *Id*. at 1187. Because of the requirement for adequate class representation, the courts have repeatedly declined to allow *pro se* inmates to represent a class in a class action. *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975) (holding that it would be plain error to permit imprisoned *pro se* litigant to represent his fellow inmates in a class action); *Caputo v. Fauver*, 800 F. Supp. 168, 169-70 (D.N.J. 1992) ("Every court that has considered the issue has held that a prisoner proceeding *pro se* is inadequate to represent the interests of his fellow inmates in a class action"). Based on the foregoing, the plaintiffs' request for class certification will therefore be denied at this time. The captions of future filings in this case should simply provide the plaintiffs' names, without reference to a class.

## COMPLAINT[3]

At all times relevant, the plaintiffs were incarcerated at the Kenosha County Jail (KCJ). (Complaint ¶1). Defendant Beth is the sheriff of Kenosha County. (Complaint ¶10). Defendants Officer Roger, Nurse Dale, Captain Preston, Sergeant Johnson and Officer Shimkus are all KCJ employees. (Complaint ¶¶10-17). Roger and Shimkus are employed as correctional officers; Dale is a nurse; Preston is a security captain; and Johnson is a sergeant. (Complaint

---

[3]The complaint has been verified pursuant to 28 U.S.C. § 1746.

Case 2:05-cv-00916-RTR   Filed 05/19/06   Page 5 of 26   Document 11

¶¶10-16).  Also named in the complaint are the Health Services Unit (HSU), the Visiting Nurses Association (VNA), and defendants John and Jane Does 1-50.[4]  (Complaint ¶15).  All defendants are sued in their individual and official capacities.  (Complaint ¶¶10-17).

The plaintiffs state that during their incarceration at KCJ, they were punished for the crimes they had "been charged with" and for their "inability to post bond."  (Complaint ¶20).  Specifically, the plaintiffs complain that: 1) they are "consistently exposed [] to extreme temperatures;" 2) they are fed a "different diet" of "cat food sandwiches;[5]" 3) "the jail administration refuses to provide disciplinary inmates with clean sheets and uniforms;" 4) they are subjected to "sleep deprivation tactics;" and 5) HSU staff revealed Franklin's medical information to another inmate "for purposes of torminting (sic) Franklin." (Complaint ¶¶ 23, 24, 33, 34c & 34d).

The plaintiffs receive "absolutely no forms (sic) of recreation."  (Complaint ¶22).  In fact, they are "punished for running, jumping, exercising in the day room as it is called disruptive conduct."  *Id*.  Furthermore, defendant Shimkus made the plaintiffs "eat food items off a dirty floor," and told to them to "eat it or you'll receive (sic) nothing."  (Complaint ¶21).  Shimkus also threatened to punish the plaintiffs for "filing a grievance about her actions." *Id*.

The "[d]efendants flood the cells with extremely bright lights, sometimes (most times) subjecting plaintiffs to two sets of lights for 24 hrs (sic) a day, 7 day (sic) a week for days

---

[4]While the caption indicates that the plaintiffs have named "John Does 1-50" and "Jane Does 1-50" as defendants, a closer reading of the complaint reveals that the plaintiffs actually name defendants "John/Jane Does 1-50." (Complaint at 1 & ¶17).  The caption shall be amended to reflect this.

[5]Because the plaintiffs put the word "cat food sandwiches" in quotations, the court construes their contention as an assertion that they have been fed sandwiches containing something that tastes like cat food, as opposed to actual cat food.

and even months at a time." (Complaint ¶24). On an unknown date, defendants Roger and Dale "physically attacked plaintiff Franklin for sleeping while housed in disciplinary segregation, even though it was approximately 5:30AM." (Complaint ¶25). Roger "sneeked (sic) into Franklin (sic) cell, kicked Franklin as hard as he could twice in the feet then ran out of the cell." *Id*. Roger had defendant Dale "slam the door shut so Franklin could not catch [him.]" *Id*. Thereafter, defendants Roger and Dale "stood outside Franklin's cell laughing and taunting Franklin until other guards came...and made them leave." *Id.* Roger and Dale threatened to use pepper spray on Franklin the next time they came around. *Id*. Then, defendant Preston covered up Roger and Dale's actions by "denying plaintiff [Franklin] his rights to persue (sic)" his legal remedies. (Complaint ¶13).

The complaint further states that defendants Dale, Preston and Beth punish Franklin for "refusing medication." (Complaint ¶26). Specifically, Dale: 1) punished Franklin with "threats of disciplinary seg;" 2) interfered with the doctor's orders; 3) denied Franklin his diabetic snack bags; 4) charged Franklin "fraudulent fees;" and 5) gave the guards Franklin's medical information "for purposes of tormenting [him]." *Id*. In addition, defendant Preston interfered with the doctor's orders "pertaining to medical fees," and defendant Beth, through his staff, threatens Franklin "with disciplinary confinement for exercising his right to refuse medication." (Complaint ¶29-30). Moreover, the jail administration forced Franklin to "participate with a diabetic diet even after Franklin formally refused the diet." (Complaint ¶31).

Defendant Beth and his staff "refuse to provide plaintiffs with access to law books." (Complaint ¶27). However, they provide federal inmates with "access to these

materials because if they don't the feds will cancel their contract with this jail." *Id*. The plaintiffs aver that this interferes with their access to the courts because they "can not understand the procedings (sic) against [them] or [their] rights that are being violated." *Id*.

The "defendants consistently refuse to acknowledge or answer grievances filed, even when these grievances are filed according to rules, policies, and instructions given by this administration." (Complaint ¶38). Defendant Doe took a "grievance that Franklin was trying to file...told Franklin that the he was a piece of shit and Franklin's grievance was going straight to the garbage." (Complaint ¶34d). Furthermore, the defendants open "constitutionally protected legal mail outside the presence of the person the mail is addressed to." (Complaint ¶36).

Defendant Johnson denies the plaintiffs due process at their discipline hearings by "refusing to let plaintiffs know or see the written report against them." (Complaint ¶35). Johnson, who is often involved in the underlying incident, conducts the disciplinary hearings himself. *Id*. Furthermore, after conducting the hearing Johnson "also hears/decides the appeal." *Id*.

HSU staff "refused to treat plaintiff Hart's needs (sic) for eyeglasses even after defendants intentionally took" his glasses from him. (Complaint ¶34a). Also, "HSU staff has refused" to accept medications sent to Hart from the Veterans Administration Hospital in Milwaukee. (Complaint ¶34b). Moreover, HSU staff "consistently refuse (sic) to treat plaintiff Franklin for his nerve damage in his hands and feet." (Complaint ¶34). Defendants HSU and VNA also deny the plaintiffs "access to their medical information" and extort money from their

accounts "for medications never requested or used by plaintiffs." (Complaint ¶15). When confronted, the defendants "refuse to explain the charges, itemize the charges or provide receipts specifying the charges." (Complaint ¶28).

The defendants "consistently house state inmates with federal inmates, particularly "INS" inmates awaiting "deportation to other countries." (Complaint ¶12). Furthermore, federal inmates "get priviledges (sic) that state inmates don't get." *Id*. These inmates are dangerous "because they are being sent back to countries that may execute them, yet state inmates receive (sic) charges for defending themselves against attack." *Id*.

The plaintiffs aver that the defendants violated their rights under the First, Fifth, and Eighth Amendments as well as the Equal Protection and Due Process Clauses of the Fourteenth Amendment. (Complaint ¶45). In addition, the plaintiffs submit that their rights under the Americans with Disability Act (ADA) and the Wisconsin Patient Bill of Rights Act have been violated. (Complaint ¶1). For relief, the plaintiffs request punitive and compensatory damages, attorney fees, and declaratory and injunctive relief. (Complaint ¶¶58). The plaintiffs have also requested a trial by jury. (Complaint ¶50).

## 1.    Equal Protection Claim

The plaintiffs submit that the defendants punished them based on the charges against them and because they were unable to post bond. Also, the plaintiffs aver that the defendants refused to provide them access to law books because they are not federal inmates. To comply with equal protection, governmental entities are generally required to treat all similarly situated persons in a similar manner. *City of Cleburne, Texas v. Cleburne Living*

Case 2:05-cv-00916-RTR   Filed 05/19/06   Page 9 of 26   Document 11

*Center*, 473 U.S. 432, 439 (1985). "To state an equal protection claim, a § 1983 plaintiff must allege that a state actor purposefully discriminated against him because of his identification with a particular (presumably historically disadvantaged) group." *Sherwin Manor Nursing Center, Inc. v. McAuliffe*, 37 F.3d 1216, 1220 (7th Cir 1994). Generally, prisoners do not constitute a suspect class and thus state actions concerning prisoners as a group are generally not entitled to heightened scrutiny. *Pryor v. Brennan*, 914 F.2d 921, 923 (7th Cir. 1990). Where the circumstances do not involve a suspect classification such as race or gender, an inmate who challenges a particular prison practice or regulation must show or indicate that the regulation is not reasonably related to a legitimate governmental concern, or must demonstrate that the challenged regulation or practice is an exaggerated response to those concerns. *See Turner v. Safely,* 482 U.S. 78 (1987); *Caldwell v. Miller*, 790 F.2d 589 (7th Cir. 1986).

In this case, the plaintiffs have satisfied the requirements for stating an equal protection claim. They have identified an association with a particular group and asserted that they were treated differently as a result of this association. Thus, the plaintiffs may proceed on their equal protection claim based on punishment and denial of legal books.

**2.     Jail Conditions Claim**

The court notes that at the time the complaint was filed the plaintiffs were pretrial detainees. Thus, any claims they present concerning jail conditions arise under the Due Process Clause of the Fourteenth Amendment as opposed to the Cruel and Unusual Punishment Clause of the Eighth Amendment. *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 764 (7th Cir. 2002). However, this distinction is immaterial since Eighth and Fourteenth Amendment conditions of

10

confinement claims are analyzed under the same legal standard. *Whiting v. Marathon Co. Sheriff's Dep't*, 382 F.3d 700, 703 (7th Cir. 2004); *see also Washington v. LaPorte County Sheriff's Dep't,* 306 F.3d 515, 517 (7th Cir. 2002) ("the protections for pretrial detainees are at least as great as the Eighth Amendment protections available to a convicted prisoner, and we frequently consider the standards to be analogous.") (internal citation and quotations omitted).

The plaintiffs submit: 1) defendant Shimkus made them eat off the floor; 2) they were denied recreation; 3) they were exposed to extreme temperatures; 4) they were fed cat food sandwiches; 5) they were punished with sleep deprivation; and 6) they were denied clean sheets and uniforms. To make out an Eighth Amendment claim based on prison conditions, an inmate must show that he has suffered an objectively, sufficiently serious injury, and that prison officials inflicted the injury with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). An objectively, sufficiently serious injury is one that deprives the inmate "the minimal civilized measure of life's necessities. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

The Supreme Court has stated that the plaintiffs cannot litigate an overriding totality of the circumstances claim based on unrelated conditions. See *Wilson v. Seiter*, 501 U.S. 294, 299 (1991) (the conditions of which they complain must be grouped according to the specific human need to which they relate). Furthermore, "[i]nmates cannot expect the amenities, conveniences and services of a good hotel; however, the society they once abused is obligated to provide constitutionally adequate confinement." *Harris v. Fleming*, 839 F.2d 1232, 1235-36 (7th Cir. 1988).

First, the plaintiffs contend that defendant Shimkus made them eat food off a dirty floor. However, the only injury the plaintiffs have identified is exposure to a dirty floor. Such a claim does not rise to the level of a sufficiently serious deprivation as contemplated by the constitution. *See Wilson*, 501 U.S. at 304 (prison conditions cannot rise to the level of cruel and unusual punishment unless the conditions produce "the deprivation of a single, identifiable human need such as food, warmth, or exercise."); *see also Delaney v. DeTella*, 256 F.3d 679, 683 (7th Cir. 2001) (only extreme deprivations will support an Eighth Amendment claim). Accordingly, the plaintiffs have failed to state a constitutional claim based on exposure to the dirty jail floor.

Second, the plaintiffs maintain that they were denied any form of recreation. Although there is no minimum period of out-of-cell exercise that must be provided to prisoners under the Eighth Amendment, a lack of exercise may constitute cruel and unusual punishment. *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985); *Delaney*, 256 F.3d at 683. A lack of exercise rises to a constitutional violation "where movement is denied and muscles are allowed to atrophy [and] the health of the individual is threatened." *French*, 777 F.2d at 1255. In this case, the plaintiffs claim that were denied all opportunities to exercise. In addition, the defendants thwarted the plaintiffs' efforts to find alternative forms of exercise. The Seventh Circuit has held that a complete denial of exercise may rise to the level of a constitutional violation. See *Anderson v. Romero*, 72 F.3d 518, 527 (7th Cir. 1996) (denial of all opportunity for out-of-cell exercise may violate the Eighth Amendment). Taking the plaintiff's assertions as true, they have alleged facts sufficient to state a claim based on denial of recreation.

12

Third, the plaintiffs maintain that they were subjected to extreme temperatures. A prisoner has a right to protection from extreme temperatures. *See, e.g, Dixon v. Godinez*, 114 F.3d 640, 643-45 (7th Cir. 1997) (prisoner claimed that because of the prison's inadequate heating and ventilation system, he endured average cell temperatures of forty degrees through four consecutive winters); *Del Raine v. Williford*, 32 F.3d 1024, 1031, 1035-36 (7th Cir. 1994) (prisoner claimed that he was strip-searched and confined to a cell for days with a broken window and no blanket when temperatures outside fell below zero); *Lewis v. Lane*, 816 F.2d 1165, 1171 (7th Cir. 1987) (prisoners claimed that the temperature in their cells during December and January fell between 52 and 54 degrees). Based on the foregoing, the plaintiffs may proceed on a claim based on extreme temperatures.

Fourth, the plaintiffs aver that they were fed cat food sandwiches. Prisoners have a right to adequate food, *see Farmer*, 511 U.S. at 833, but not to food that is tasty or even appetizing. *See Lunsford v. Bennett*, 17 F.3d 1574, 1578 (7th Cir. 1994) (complaint about "cold, poorly prepared beans" did not state Eighth Amendment claim). Indeed, routine discomfort is part of the penalty prisoners pay for their offenses. *Harris,* 839 F.3d at 1235. Here, the plaintiffs have simply averred that the food they receive is not to their liking. For the reasons discussed above, this fails to state a constitutional claim.

Fifth**,** the plaintiffs assert that the defendants subjected them to constant illumination. An environment of constant illumination may violate the Eighth Amendment if it causes sleep deprivation or leads to other serious physical or mental health problems. *Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996) (24-hour illumination by fluorescent lights not

Case 2:05-cv-00916-RTR   Filed 05/19/06   Page 13 of 26   Document 11

dimmed at night); *King v. Frank*, 371 F. Supp.2d 977, 984-85 (W.D. Wis. May 26, 2005) (a condition of confinement such as constant illumination violates the Eighth Amendment if it denies the inmate "the civilized measure of life's necessities."). In this case, the plaintiffs have averred that the illumination has resulted in sleep deprivation. Therefore, the plaintiffs may proceed on a constant illumination claim.

Finally, the plaintiffs state that the jail administration refused to provide inmates in disciplinary segregation with clean sheets and uniforms. In this case, the only injury the plaintiffs have identified is exposure to dirty sheets and uniforms. However, there is no indication that being subjected to unclean linens alone is a sufficient enough a deprivation to violate the constitution. *See Wilson*, 501 U.S. at 298 (prison conditions do not rise to the level of cruel and unusual punishment unless the conditions produce "the deprivation of a single, identifiable human need such as food, warmth, or exercise."); *see also Coughlin v. Sheahan*, 1995 U.S. Dist. LEXIS 188 (N.D. Ill. Jan. 12, 1995) (denial of clean clothes for three months not a constitutional deprivation). Accordingly, the plaintiffs have failed to state a conditions of confinement claim regarding lack of clean clothes and sheets.

## 3. Medical Care Claim

The plaintiffs aver that they were denied medical care when: 1) HSU staff refused to accept medications sent to plaintiff Hart by the Veterans Administration; 2) HSU staff refused to treat Hart's need for eyeglasses; and 3) plaintiff Franklin was denied medical care for nerve damage in his hands and feet. When considering a pretrial detainee's claim of inadequate medical care, the analogous standards under the Eighth Amendment are often used. *Whiting,*

14

Case 2:05-cv-00916-RTR   Filed 05/19/06   Page 14 of 26   Document 11

382 F.3d at 703. Deliberate indifference to the serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, and thus is proscribed by the Eighth Amendment. *Walker v. Benjamin*, 293 F.3d 1030, 1040 (7th Cir. 2002) (*citing Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976)). To establish liability under the Eighth Amendment, a prisoner must show: (1) that his medical need was objectively serious; and (2) that the official acted with deliberate indifference to the prisoner's health or safety. *Farmer,* 511 U.S. at 834; *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001); *see also Estelle*, 429 U.S. at 104-05; *Zentmyer v. Kendall County, Illinois*, 220 F.3d 805, 810 (7th Cir. 2000).

First, Hart maintains that HSU refused to provide him with medications from the Veterans Administration. At most, he has alleged a difference of opinion with the KCJ medical professionals. However, the fact that Hart disagrees with medical decisions made by the HSU does not state a cognizable claim under the deliberate indifference standard of *Estelle v. Gamble*. *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003). Moreover, under the Eighth Amendment, a plaintiff is not entitled to demand specific care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) (inmates are not entitled to the "best care possible," but to reasonable measures to prevent "a substantial risk of serious harm."). Accordingly, Hart has failed to allege facts of a constitutional magnitude.

Second, Hart submits that HSU denied him treatment for his eyeglass-related needs. Although it is not clear whether Hart suffered from a serious medical need, he does allege that he was denied medical treatment. District courts have been instructed to construe such doubts are to be construed in a *pro se* plaintiff's favor. See *Haines,* 404 U.S. at 520-21

(the court is obliged to give the plaintiff's *pro se* allegations, however inartfully pleaded, a liberal construction).  Thus, Hart may proceed on a claim based on denial of his eyeglass-related needs.

Finally, plaintiff Franklin contends that the defendants denied him treatment for nerve damage in his hands and feet.  At this point, it is unclear whether Franklin's condition constitutes a serious medical need.  Therefore, construing the complaint liberally, Franklin has alleged facts sufficient to state a claim based on denial of medical treatment for his nerve damage.

**4.      Excessive Force Claim**

Plaintiff Franklin avers that defendant Roger snuck into his cell while he was sleeping and kicked him twice in the feet.  Because Franklin was a pre-trial detainee at the time of the alleged events, his excessive force allegations are governed by the Due Process Clause. *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) ( "the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment.").  However, this distinction is immaterial since deliberate indifference is the applicable standard in § 1983 cases alleging excessive force by pre-trial detainees. *Proffitt v. Ridgway*, 279 F.3d 503, 506 (7th Cir. 2002); *see also Haas v. City of Milwaukee,* 2006 U.S. Dist. LEXIS 26483 (E.D. Wis. Apr. 17, 2006).  The  Seventh Circuit has held that in determining whether a prison official acted with deliberate indifference, a factfinder may rely on objective factors. *Wilson v. Williams*, 83 F.3d 870, 876 (7th Cir. 1996) (in excessive force cases, a jury may properly rely on objective factors to arrive at the determination of intent).  Generally, these factors include the need for an

application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, the efforts made to temper the severity of a forceful response, and the extent of the injury suffered by the prisoner. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). With respect to the last factor, "while significant injury is not required, a claim ordinarily cannot be predicated upon a *de minimus* use of physical force." *Hudson,* 503 U.S. at 9-10. Thus, "not every push or shove by a prison guard violated a prisoner's constitutional rights." *See id.* at 9 (citing *Johnson v. Glick,* 481 F.2d 1028, 1033 [2d. Cir. 1973]). In this case, Roger's act of kicking Franklin in the feet to wake him up qualifies as the kind of *de minimus* use of force that does not constitute cruel and unusual punishment. Specifically, Franklin does not assert that he suffered a significant physical injury as a result of Roger's actions. *Hudson,* 503 U.S. at 9-10. Moreover, it appears that this was an isolated incident. *See DeWalt,* 224 F.3d at 619 (a single and isolated act, such as a shove, unaccompanied by further use of force fails to state an excessive force claim). In light of the foregoing, Franklin has failed to allege facts sufficient to state a claim for excessive force.

**5.      Failure to Protect Claim**

The plaintiffs maintain that when they are housed with INS inmates they have to defend themselves against attack. Because the plaintiffs were pre-trial detainees at the time of the alleged events, their claim arises under the Fourteenth Amendment Due Process Clause rather than the Eighth Amendment's Cruel and Unusual Punishments Clause. *Whiting,* 382 F.3d at 703. However, this distinction is immaterial since deliberate indifference is the applicable

standard in §1983 cases where a pre-trial detainees alleges that the defendants failed to protect him from harm by another prisoner. *See id*; *see also Floyd v. Nelson*, 2002 U.S. Dist. LEXIS 14361 (N.D. Ill. Aug. 2002). The Eighth Amendment's Cruel and Unusual Punishment Clause imposes upon prison officials the duty to "take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832(quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). To state a failure to protect claim, a plaintiff-inmate must allege that (1) "he is incarcerated under conditions posing a substantial risk of serious harm," and (2) defendant-officials acted with "deliberate indifference" to that risk. *Farmer*, 511 U.S. at 834. In this case, the plaintiffs have only alleged that they are housed with INS inmates. However, there is no indication how being housed with INS inmates, by itself, constitutes a condition "posing a substantial risk of serious harm." *Id*. Thus, the plaintiffs have failed to state a failure to protect claim.

**6.      Due Process Claim**

          The plaintiffs aver that the defendants violated their due process rights when they: 1) forced plaintiff Franklin to receive a diabetic diet; 2) fraudulently charged the plaintiffs for medications they did not need or receive; and 3) refused to let the plaintiffs see copies of their disciplinary hearing reports and permitted defendant Johnson to preside over disciplinary hearings and decide appeals. To establish a procedural due process violation, a prisoner must demonstrate that the state deprived him of a liberty or property interest created either by state law or the Due Process Clause itself. See *Sandin v. Connor*, 515 U.S. 472, 483-84 (1995). A liberty interest exists when prison officials restrain the freedom of inmates in a manner that

"imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484.

First, plaintiff Franklin contends that he was forced to receive a diabetic diet against his will. An inmate has an interest, protected by the Due Process Clause of the Fourteenth Amendment, in refusing unwanted medical treatment. *Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261, 278-79 (1990) (a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment). A regulation that impinges on this interest in valid only if it is reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 87 (1987). Here, Franklin does not assert that he received unwanted medical treatment. Rather, he contends that he was forced to eat a specific type of food. Thus, he has failed to allege facts sufficient to state a due process claim based on a diabetic diet.

Next, the plaintiffs submit that they were charged for medications that they did not request or receive. If a person has a protected property interest, the due process clause of the Fourteenth Amendment requires "some form of hearing" before the owner is deprived of a protected property interest. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433(1982) (citing *Board of Regents v. Roth*, 408 U.S. 564, 570-571 [1972]). The plaintiffs aver that they were deprived of a protected property interest (money) without due process of law. Accordingly, they have stated a due process claim based on fraudulent medication charges.

Finally, the plaintiffs allege that during their disciplinary hearings, defendant Johnson prevented them from seeing copies of their disciplinary reports. Furthermore, Johnson was permitted to preside over the plaintiffs' hearings and appeals even though he was involved

19

in the underlying violations. "A pretrial detainee cannot be placed in segregation as a punishment for a disciplinary infraction without notice and an opportunity to be heard; due process requires no less." *Higgs v. Carver*, 286 F.3d 437, 438 (7th Cir. 2002) (citing *Rapier v. Harris*, 172 F.3d 999, 1004-05 (7th Cir. 1999); *Mitchell v. Dupnik*, 75 F.3d 517, 524-25 (9th Cir. 1996)). Under *Wolff v. McDonnell*, 418 U.S. 539, 565 (1974), the following procedural protections are required when a liberty interest is at stake: 1) advance written notice of the disciplinary charges; 2) an opportunity to call witnesses and present documentary evidence; and 3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. In this case, the plaintiffs assert that defendant Johnson failed to provide them with proper notice and hearing when depriving them of a protected liberty interest. The court therefore concludes that the complaint is sufficient to state a due process claim.

## 7. Access to the Courts Claim

The plaintiffs state that the defendants refuse to acknowledge the plaintiffs' prison grievances. Prisoners have a constitutional right of access to the courts and must be given a reasonably adequate opportunity to present their claims. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). In order to state an access to the courts claim, the plaintiffs must "make specific allegations as to the prejudice suffered because of the defendants' alleged conduct." *Marshall v. Knight*, 2006 U.S. App. LEXIS 10395 (7th Cir. Apr. 26, 2006) (*quoting Ortloff v. United States*, 335 F.3d 652, 656 [7th Cir. 2003]).

Here, the plaintiffs have done nothing more than aver that their grievances were ignored. Notably, they have not complained that wrongdoing by the defendants resulted in an

actual injury. See *Lewis v. Casey,* 518 U.S. 343, 353 n.4 (1996) (an access to the courts claim will fail absent identification of some injury linked to the deprivation).[6]  In light of the foregoing, the plaintiffs' access to the courts claim must fail.

**8.  Retaliation Claim**

The plaintiffs submit that defendant Doe threatened to pepper spray Franklin if he filed a grievance against him.  Moreover, defendant Shimkus threatened to punish the plaintiffs if they filed a grievance against her.  A plaintiff must plead three elements in order to state a claim for retaliation: he must "specif[y] a retaliatory action;" he must name the appropriate defendants; and he must "assert[] a constitutionally protected activity, the exercise of which caused the . . . retaliatory action." *Hoskins*, 395 F.3d at 275.  The plaintiffs have not met this standard.  While they have specified the relevant defendants (Doe and Shimkus) and they have invoked their constitutional right to use the prison grievance procedures, they have not identified any retaliatory action. *See id.*  Therefore, at this stage the plaintiffs' complaints are speculative in nature.  However, "[t]he absence of an actual or imminent injury...deprive[s] federal courts of jurisdiction under Article III, which empowers the federal judiciary to decide 'cases' or 'controversies.'" *Marshall,* 2006 U.S. App. LEXIS 10395.  Accordingly, the plaintiffs have failed to state a claim for retaliation.

**9.  Legal Mail Claim**

The plaintiffs next claim that the defendants have opened their constitutionally protected mail outside their presence. Prisoners have a First Amendment right to be free from

---

[6]In fact, the plaintiffs submit that they have exhausted their "administrative remedies with regard to all specified complaints."  (Complaint ¶19).

certain interference with their "legal" mail. *Wolff v. McDonnell*, 418 U.S. 539, 577 (1974); *Watson v. Cain*, 846 F. Supp. 621, 626 (N.D. Ill. 1993); *see also Turner v. Safely*, 482 U.S. 78, 84 (1987). Therefore, prison officials may only inspect, not read, certain types of legal mail in the presence of the inmate. *Wolff,* 418 U.S. at 577; *Bach v. People of State of Illinois*, 504 F.2d 1100, 1102 (7th Cir. 1974); cert. denied, 418 U.S. 910 (1974). For example, correspondence between an inmate and an attorney (even a potential attorney or legal representative) is deemed confidential and therefore must be opened in the presence of the inmate. *Wolff*, 418 U.S. at 577; *Bach*, 504 F.2d at 1102; *Watson*, 846 F. Supp. at 629, 631. Accordingly, the plaintiffs have stated a legal mail claim.

**10.    RLUIPA Claim**

The plaintiffs contend that they were denied church services. "RLUIPA forbids [] prisons that receive federal funding to burden a prisoner's exercise of religion substantially unless the prison both has a compelling interest and employs the least restrictive means possible for protecting that interest." *Lindell v. McCallum*, 352 F.3d 1107, 1109-10 (7th Cir. 2003). Because the Wisconsin prison system receives federal funding, a prisoner need only allege that the prison has substantially burdened a religious belief in order to state a claim under RLUIPA. *Id*. In this case, the plaintiffs submit that they were denied the opportunity to practice their religious beliefs. Thus, they have alleged facts sufficient to state a claim under RLUIPA.

22

## 11.    ADA Claim

The plaintiffs aver that the defendants violated their rights under the Americans with Disabilities Act.  Title II of the Americans with Disabilities Act of 1999 (ADA), 104 Stat. 337, 42 U.S.C. § 12131 *et seq*., provides:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.  Title II applies to state prison inmates.  *Penn. Dep't of Corrs. v. Yeskey*, 524 U.S. 206, 213 (1998).  The complaint does not present any facts indicating that either Franklin or Hart is a qualified individual with a disability.  *See* § 12131(2)(A) "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable modifications to rules, policies or practices, the removal of architectural, communication, or transportation barrier, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."). Therefore, the plaintiffs have failed to state a claim for relief under the ADA.

## 12.    Conspiracy Claim

The plaintiffs claim that defendant Preston covered up the actions of defendants Dale and Roger.  It is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with. *Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003); *see also Walker v. Thompson,* 288 F.3d 1005 (7th Cir. 2002).  Here, the plaintiffs have failed to meet the requirements for a conspiracy

claim. Although they have identified the parties involved (defendants Roger, Dale and Preston) and the general purpose (to cover up Roger and Dale's alleged wrongdoing), the plaintiffs have not given any indication when the alleged conspiracy occurred. Accordingly, the plaintiffs have failed to state facts sufficient to proceed on a conspiracy claim.

## 13.    Fifth Amendment Claim

The plaintiffs assert that the defendants violated their rights under the Fifth Amendment. The Fifth Amendment is the federal action counterpart to the Fourteenth Amendment. *See Paul v. Davis*, 424 U.S. 693, 702 n.3 (1976). Here, the plaintiffs have not lodged a complaint against any federal actors. Thus, they have failed to state a claim under the Fifth Amendment.

## 14.    Patients' Bill of Rights Claim

The plaintiffs assert that the defendants violated their rights under the Fifth Amendment. The Fifth Amendment is the federal action counterpart to the Fourteenth Amendment. *See Paul v. Davis*, 424 U.S. 693, 702 n.3 (1976). Here, the plaintiffs have not lodged any complaints against any federal actors. Thus, they have failed to state a claim under the Fifth Amendment.

As a final matter, the court notes that the plaintiffs seek to proceed on individual and official capacity claims against all defendants. A suit against a state official in his or her official capacity is a suit against the official's office. As such, it is not different than a suit against the state itself. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The plaintiff's official capacity claims against defendant is therefore a claim against the state. The

Eleventh Amendment bars suits for damages in federal court against unconsenting states unless Congress has exercised its power to override the immunity. *Id.* at 66. To the extent that plaintiff seeks compensatory and punitive damages, his official capacity claims must be dismissed because of Eleventh Amendment immunity and also because the state is not a person suable under 42 U.S.C. § 1983. *See id.* at 66-67, 71.

In summary, the plaintiffs may proceed on the following claims: 1) equal protection; 2) conditions of confinement; 3) due process; 4) medical care; 5) RLUIPA; and 6) legal mail as described herein. The remaining claims are dismissed.

## ORDER

**IT IS THEREFORE ORDERED** that plaintiff Harrison Franklin's motion for leave to proceed *in forma pauperis* (Doc. #3) is **denied**.

**IT IS FURTHER ORDERED** that plaintiff Louis Delphie's motion for leave to proceed *in forma pauperis* (Doc. #2) is **denied.**

**IT IS ALSO ORDERED** that Louis Delphie is dismissed.

**IT IS ALSO ORDERED** that the caption shall be amended to name "John/Jane Does 1-50" as defendants, instead of "John Does 1-50" and "Jane Does 1-50."

**IT IS FURTHER ORDERED** that the United States Marshal shall serve a copy of the complaint, the summons, and this order upon the defendants pursuant to Federal Rule of Civil Procedure 4.

**IT IS ALSO ORDERED** that the defendants shall file a responsive pleading to the complaint.

**IT IS ALSO ORDERED** that copies of this order be sent to the warden of the institution where the inmate is confined and to Corey F. Finkelmeyer, Assistant Attorney General, Wisconsin Department of Justice, P.O. Box 7857, Madison, Wisconsin, 53707-7857.

Plaintiff is hereby notified that he is required to send a copy of every paper or document filed with the court to the opposing parties or their attorney(s). Fed. R. Civ. P. 5(a). Plaintiff should also retain a personal copy of each document. If plaintiff does not have access to a photocopy machine, plaintiff may send out identical handwritten or typed copies of any documents. The court may disregard any papers or documents which do not indicate that a copy has been sent to each defendant or to their attorney(s).

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk's Office of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 18th day of May, 2006.

**SO ORDERED,**

**s/Rudolph T. Randa**
**HON. RUDOLPH T. RANDA**
**Chief Judge**