# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

HARRISON FRANKLIN
and WAYNE HART,

                          Plaintiffs,

               -vs-                               Case No.    05-C-0916

DAVID BETH, et al.,

                          Defendants.

# DECISION AND ORDER

         Plaintiffs Harrison Franklin and Wayne Hart, who are presently confined at the Columbia Correctional Institution (CCI) and Waupun Correctional Institution (WCI), respectively, filed this joint *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Before the court are the defendants' motions for summary judgment.

## I. STATEMENT OF THE CASE

         The plaintiffs' amended complaint alleges claims pertaining to their incarceration at the Kenosha County Jail. The court allowed the plaintiffs to proceed on the following claims: (1) an equal protection claim based on alleged unequal treatment and unequal access to law books; (2) Eighth Amendment conditions of confinement claims regarding alleged denial of recreation, sleep deprivation due to cell illumination, and exposure to extreme temperatures; (3) a due process claim regarding alleged improper

charges for medication not received and alleged refusal to prove plaintiffs with reports written against them in prosecution of disciplinary charges; (4) Eighth Amendment medical claims regarding plaintiff Hart's claim for new eyeglasses, plaintiff Hart's claim regarding denial of medication from the Veteran's Administration, and plaintiff Franklin's claim regarding nerve problems with his hands and feet; (5) a RLUIPA claim alleging denial of access to church services; (6) First Amendment claim alleging opening of legal mail; and (7) an Eighth Amendment cruel and unusual punishment claim alleging failure to protect plaintiffs from federal inmates housed at the jail.

Defendants David Beth, Officer Roger, Captain Preston, Officer Shimkus, Sgt. Johnson, Health Service Unit, John Doe 1-50, and Jane Doe 1-50 filed a motion for summary judgment on all of the plaintiffs' claims. Defendant Nurse Dale is represented by separate counsel because he is not a government employee; he also filed a motion for summary judgment and adopted the arguments of the other defendants. The defendants contend that they are entitled to summary judgment because the plaintiffs failed to exhaust their administrative remedies on their claims. Additionally, the defendants argue they are each entitled to qualified immunity. Finally, the defendants argue and present evidence that they are entitled to summary judgment on the merits of the plaintiffs' claims.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *McNeal v. Macht*, 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those facts that, under the applicable substantive law, "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material facts" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The burden of showing the needlessness of trial – (1) the absence of a genuine issue of material fact, and (2) an entitlement to judgment as a matter of law – is upon the movant. However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Anderson*, 477 U.S. at 267; *see also Celotex Corp.*, 477 U.S. at 324 ("proper" summary judgment motion may be "opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves . . ."); Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. "). "Rule 56(c) mandates the entry of summary judgment, . . . upon motion, against a party who fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

3

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. *Johnson v. Pelker*, 891 F.2d 136, 138 (7th Cir. 1989). "However, we are not required to draw every conceivable inference from the record – only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991) (citation omitted).

## III. EXHAUSTION

### A. Exhaustion Requirement

Exhaustion of administrative remedies is a condition precedent to suit. *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002) (citing *Perez v. Wis. Dep't of Corrs.*, 182 F.3d 532, 535 (7th Cir. 1999)). The Prison Litigation Reform Act of 1995 (PLRA), Pub.L. 104-134, 110 Stat. 1321 (1996), provides in pertinent part that:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Section 1997e applies to "all inmate suits, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Total exhaustion is not required. "As a general matter, if a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad. [O]nly the bad claims are dismissed; the complaint as a whole is not." *Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 924 (2007). The PLRA exhaustion requirement requires "proper exhaustion,"

4

meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines. *Woodford v. Ngo*, 126 S.Ct. 2378, 2384, 2387 (2006); *see also Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require"). Exhaustion is an affirmative defense, and the burden of proof is on the defendants. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (citing *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004)).

Prison grievance procedures, not the PLRA, determine the level of specificity required in an inmate's administrative grievance:

> Compliance with the prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Jones*, 127 S. Ct. at 922-23. Drawing on principles of notice pleading, the Seventh Circuit has held that, absent more stringent administrative requirements, an inmate need not state "facts, legal theories, or demand relief," so long as the grievance objects "intelligibly to some asserted shortcoming." *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002); *see Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004).

### B. Kenosha County Jail Procedures

The policies and procedures of the Kenosha County Jail are set forth in the Kenosha County Sheriff's Department Detentions Division Pre-Trial Facility Inmate Rules, Regulations and Information Packet ("Inmate Rules"). (Affidavit of Gary D. Preston, ¶ 5,

5

Exhibit E.)  The relevant Inmate Rules were revised December 12, 2003.  (Preston Aff., ¶ 5, Ex. E.)  On September 21, 2004, plaintiff Hart signed a form acknowledging his receipt of the Inmate Rules and his "responsibility to read and abide by the rules and regulations set forth in this handbook."  (Preston Aff., ¶ 7, Ex. F-3.)  On both March 15 and April 7, 2005, plaintiff Frank signed the same form.  (Preston Aff., ¶ 6. Exs. F-1 and F-2.)

The Inmate Rules provides:

> **Complaints:** During your confinement you may feel you have a basis for a complaint.  When this is the case, whenever possible, you are encouraged to resolve the complaint informally with a Correctional Officer or applicable staff member.  When an informal resolution is not possible, written complaints and decision appeals are to be submitted in writing to the shift supervisor.  All complaints property submitted will be reviewed by the applicable staff member.  The legitimacy of each complaint will be determined and a response/resolution will be provided.  Keep in mind that the complaint procedure is a vehicle for you to seek resolution for legitimate factual concerns.

(Preston Aff., ¶ 5, Ex. E, p. 7.)  Further, the inmate request/grievance form is available for inmates to "request, authorize or communicate information to staff members."  Each inmate request/grievance form must include the inmate's I.D. number.  (Preston Aff., ¶ 5, Ex. E, p. 6.)  The Inmate Rules describe the form: "The Inmate Request/Grievance Form is a general-purpose document used to request a variety of services and programs.  The form can be used to submit a complaint, concern, or convey information to a staff member.  The request/grievance must be legible, on the proper form, signed, dated, and submitted without profanity."  (Preston Aff., ¶ 5, Ex. E, p. 6 (emphasis in original).)

6

Some of the plaintiffs claims result from grievances filed prior to May 10, 2005. At that time, the inmate request/grievance form did not provide a procedure for inmates to appeal a grievance decision. (Preston Aff., ¶ 8.) It did include the following directions: "If this is a grievance, state all inmates or detention staff involved as well as we the date and time of the occurrence." (Preston Aff., ¶ 9, Ex. FFFF.)

Franklin's claims also relate to a number of grievances submitted after May 10, 2005. The newer inmate grievance/appeal form requires the form to filed within 24 hours of the occurrence giving rise to the complaint. (Preston Aff., Ex. QQQQ.) It also directs that the complaint should address only one issue, should be printed, must be signed and must not contain profanity. *Id.* Further, the written inmate grievance response form states, "[i]f you are dissatisfied with the results of this Grievance, you have 72 hours from receipt of this form to file an appeal." (Preston Aff. ¶12, Ex. SSSS.)

## IV. WAYNE HART'S CLAIMS

Wayne Hart, Jr. is one of the plaintiffs in this case. In a screening order dated May 19, 2006, Hart was allowed to proceed on each of the claims listed above. The defendants have brought motions for summary judgment and presented evidence that Hart failed to exhaust a number of his claims. In the event that plaintiff Hart exhausted his administrative remedies on any of his claims, the defendants have also presented evidence that they are entitled to summary judgment on the merits of Hart's claims. Plaintiff Hart has not responded to the defendants' motions for summary judgment.

7

**Exhaustion**

Hart did not file grievances regarding the following claims: the equal protection claim based on classification, the equal protection claim based on access to law books, the Eighth Amendment conditions of confinement claim regarding denial of recreation time, the Eighth Amendment conditions of confinement claim regarding excessive cell illumination, the Eighth Amendment conditions of confinement claim regarding extreme temperatures; the due process claim regarding charges for medications, the due process claim regarding provision of written reports in disciplinary proceedings, the Eighth Amendment medical care claim regarding medications from the VA, the RLUIPA claim regarding access to church services, and the Eight Amendment failure to protect claim regarding protection from INS inmates at the jail. (Preston Aff., ¶¶ 31, 46, 47, 65, 81, 91, 118, 160, 169, and 191.) As a result, plaintiff Hart failed to exhaust his administrative remedies regarding all of the above-mentioned claims. The court will grant summary judgment in favor of defendants and against plaintiff Hart on each of those claims. The court will engage in further analysis and discussion regarding plaintiff Hart's Eight Amendment claim regarding his eyeglasses and his First Amendment Claim regarding the opening of legal mail.

**Eighth Amendment - Eyeglasses**

Plaintiff Hart claims that HSU staff "refused to treat plaintiff Hart's needs for eyeglasses even after defendants intentionally took" his glasses from him. However, Hart never submitted a grievance alleging that HSU failed to treat his need for eyeglasses. Rather, Hart used inmate request/grievance forms to arrange to obtain new eyeglasses from an

8

outside source. On January 18, 2005 Hart submitted a request to use the telephone to call his ex-wife about his eyeglasses. In response, Hart was allowed one brief phone call.[1] (Preston Aff., ¶¶ 145-146, Ex. Z.) On March 14, 2005, Hart made a written request for a document to be notarized to authorize payment for his eyeglasses. (Preston Aff., ¶¶ 147-148, Ex. AAA.) The form indicates the request was "done" on March 16, 2005. (Id.) On May 2, 2005, Hart submitted a form marked as a "request" and "grievance" complaining that two attempts to deliver the package with his eyeglasses to the jail had failed because the package had not been pre-approved. (Preston Aff., ¶¶ 149-151, Ex. BBB.) In response, the jail granted Hart's request for approval of delivery of the eyeglasses. (Id.) None of these documents puts the defendants on notice of Hart's Eighth Amendment claim that the defendants refused to treat his need for eyeglasses. He therefore failed to exhaust his administrative remedies regarding this claim, and the court will grant summary judgment in favor of defendants.

### First Amendment - Legal Mail

Plaintiff Hart also claims the defendants violated his First Amendment rights by allegedly opening his legal mail. Hart submitted a grievance on April 6, 2005 that stated:

> Caption Preston, I am writting this "GRIEVANCE" to you in-regards to my "legal mail" that I receive. Please tell me why my legal-mail is always opened BEFORE it gets to me and I am not buying the fact that it goes to my son first! This is in violation of attorney/client priviledges, and I would like to know why this is continuously happening to me? Should I seek out-side legal

---

[1] Hart submitted a similar request on January 17, 2005. A jail official responded the same day and asked for a clarification of Hart's request. Hart then made his January 18, 2005, request, which was granted. (Preston Aff., ¶¶ 145-146, Exs. Y and Z.)

representation on a law-suit into this matter or can we put a stop
to this now? [sic]

(Preston Aff., ¶ 175, Ex. Q.) Jail staff responded the same day: "Staff has been reminded to be more careful with legal mail. Mr. Hart you may also want to remind your attorney to make sure they address it to Wayne Hart Jr. , hopefully this will help decipher if it is for you or your son." (Preston Aff., ¶ 176, Ex. Q.) This grievance put the defendants on notice that Hart was challenging the opening of his legal mail. At the time of this grievance and response, there was no procedure for inmates to appeal a grievance decision. Hart exhausted his administrative remedies regarding his First Amendment claim, and the court will consider this claim on the merits.

Prisoners have a limited liberty interest in their mail under the First and Fourteenth Amendments. *Procunier v. Martinez*, 416 U.S. 396, 413-14 (1974), overruled on other grounds by, *Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989). It is well established that prisoners have a First Amendment right to be free from certain interference with their "legal" mail. *Wolff v. McDonnell*, 418 U.S. 539, 577 (1974); *see also Kaufman v. McCaughtry*, 419 F.3d 678, 685-86 (7th Cir. 2005). Therefore, prison officials may only inspect, not read, certain types of legal mail in the presence of the inmate. *Wolff*, 418 U.S. at 577; *Bach v. People of State of Ill.*, 504 F.2d 1100, 1102 (7th Cir. 1974). For example, correspondence between an inmate and an attorney is deemed confidential and, therefore, must be opened in the presence of the inmate. *Wolff*, 418 U.S. at 577.

The defendants admit that a piece of legal mail for Hart was opened outside his presence on April 6, 2005. However, the defendants contend the opening of the mail was

10

inadvertent. Hart was incarcerated in the Kenosha Count Jail from September 21, 2004 through September 30, 2005. (Preston Aff., ¶¶ 179-180, Exs. R and S.) During that time, Hart received only one piece of legal mail, a letter from Attorney Vincent Rust logged on April 6, 2005, the date of Hart's grievance. (Preston Aff., ¶¶ 178, 181, 182, Ex. T.) As such, the language of Hart's grievance was hyperbole when he referred to "always opened" and it happening "continuously." Further, Hart's son, Wayne J. Hart, III, was incarcerated at the Kenosha County Jail from March 3, 2005 until July 1, 2005. (Preston Aff., ¶ 177.) The defendants' response to Hart's grievance indicates the letter was mistakenly delivered to his son before being routed to Hart. (Preston Aff., ¶ 176, Ex. Q.)

The evidence presented shows that the opening of Hart's legal mail on April 6, 2005 was an isolated error. Isolated mail errors are not actionable, as they do not state a First Amendment claim. *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999). Hart does not have an actionable First Amendment legal mail claim, and the court will grant summary judgment in favor of the defendants.

## V. HARRISON FRANKLIN'S CLAIMS

Harrison Franklin, the other plaintiff in this case, also was allowed to proceed on each of the claims listed in Section I above. In their motions for summary judgment, the defendants contend that Franklin failed to exhaust a number of his claims as well. The defendants also present substantive evidence in favor of summary judgment. Franklin has not responded to the defendants' motions for summary judgment.

11

**Exhaustion**

Franklin failed to file grievances regarding the following claims: (1) his equal protection claim based on classification of inmates; (2) his RLUIPA claim regarding the denial of church services; and (3) his Eighth Amendment claim alleging a failure to protect the plaintiff from INS inmates. He therefore failed to exhaust his administrative remedies regarding these three claims, and the court will grant summary judgment in favor of the defendants. The court will address Franklin's remaining claims individually.

**Equal Protection Claim Regarding Law Books**

Franklin alleges that the defendants denied him access to legal material to aid in his defense.[2] Franklin included this claim in a grievance he submitted on April 19, 2005. Although Franklin did not specify the time and date on which he alleged he was denied access to legal books and research materials, or the name of the staff member involved, jail staff did not address this claim in the response to Franklin's grievance. (Medly Aff., ¶ 108, Ex. HHH.) Nor did the jail employee responding to Franklin's grievance direct him to submit another grievance with additional details. (Medly Aff., ¶ 108, Ex. HHH.) On April 19, 2005, the jail did not provide a procedure for appealing a grievance decision. (Preston Aff., ¶ 8.) Given the lack of response to the plaintiff's grievance and his inability to appeal,

---

[2] To the extent Franklin's claim alleges disparate treatment because BICE immigration detainees at the Kenosha County Jail have access to Lexis Nexis and a computer for legal research, Franklin's claim fails. It is not the defendants but, rather, the Department of Homeland Security and the United States Marshal Service, who provide those legal materials to the federal prisoners detained at the Kenosha County Jail. (Preston Aff., ¶¶ 44-45.)

Case 2:05-cv-00916-RTR   Filed 09/04/08   Page 12 of 29   Document 233

the court finds that Franklin exhausted his administrative remedies and will consider the merits of Franklin's claim.

Franklin alleges a violation of a right to assist in his defense in his criminal case, but admits he was represented by counsel in his criminal case. (Bruch Aff., ¶¶ 4, 6.) To establish a denial of his constitutional right an inmate must show that the prison had deficient legal facilities and that he was hindered in his efforts to pursue a particular legal claim. *See Lewis v. Casey*, 518 U.S. 343, 351 (1996); *see also Alston v. Debruyn*, 13 F.3d 1036, 1040-41 (7th Cir. 1994) (holding that inmate must establish (1) the failure of prison officials to assist in the preparation and filing of meaningful legal papers and (2) some quantum of detriment caused by the challenged conduct). Even if the inmate can establish an "absolute deprivation of access to all legal materials," his claim will fail absent identification of some injury linked to the deprivation. *Lewis*, 518 U.S. at 353 n.4.

Franklin does not plead an actual injury resulting from his inability to access legal books or research materials, and he has presented no evidence of such an injury. Therefore, Franklin has not presented a sustainable constitutional claim for denial of access to legal books and research materials, and the court will grant summary judgment in favor of the defendants.

### Conditions of Confinement

Franklin asserts that the conditions of his confinement violated his constitutional rights in three ways: (1) the denial of recreation; (2) the constant illumination

of his cell and (3) extreme temperatures in his cell.[3]  Franklin's claims arise under the Due Process Clause of the Fourteenth Amendment rather than the Cruel and Unusual Punishment Clause of the Eighth Amendment because he was a pretrial detainee at the relevant time. *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 764 (7th Cir. 2002).  This distinction is immaterial because conditions of confinement claims made under both the Eighth and Fourteenth Amendment are analyzed under the same legal standard.  *Washington v. LaPorte County Sheriff's Dep't.*, 306 F.3d 515, 517 (7th Cir. 2002).

### Recreation

Franklin maintains he was denied any form of recreation.  He included this claim in the grievance he submitted on April 19, 2005.  (Preston Aff., ¶ 51.)  Similar to his equal protection claim regarding law books, Franklin failed to provide the date and time of the denial of recreation, or the names of the staff involved.  (Medly Aff., ¶ 108, Ex. HHH.)  Likewise, the response to the grievance failed to address Franklin's denial of recreation claim.  (Medly Aff., ¶ 108, Ex. HHH.)  Nor did the jail employee responding to Franklin's grievance direct him to submit another grievance with additional details.  (Medly Aff., ¶ 108, Ex. HHH.)  At the time of this grievance, the jail did not provide a procedure for appealing a grievance decision.  (Preston Aff., ¶ 8.)  Again, given the lack of response to the plaintiff's grievance and his inability to appeal, the court finds that Franklin exhausted his administrative remedies and will consider the merits of Franklin's claim.

---

[3]  The defendants argue that Franklin failed to exhaust each of these three claims.  The court will address the exhaustion of each claim separately below.

14

In his grievance, Franklin wrote: "This inst. is denying inmates recreation even though inmates are entitled to 5 hrs. of recreation per week." (Preston Aff., ¶ 51.) Contrary to Franklin's assertion, detainees are not entitled to five hours of recreation per week. Lack of exercise may rise to a constitutional violation only in certain limited circumstances "where movement is denied and muscles are allowed to atrophy [and] the heath of the individual is threatened." *Thomas v. Ramos*, 130 F.3d 754, 763 (7th Cir. 1998)(quoting *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985)). That is not the case here. In fact, the Seventh Circuit has found that "the Eighth Amendment was not violated when an inmate was confined to his cell twenty four hours a day and denied all outside and indoor exercise privileges for a month, followed by a six month period of confinement in a cell for twenty three hours a day with only one hour of daily indoor exercise." *Thomas*, 130 F.3d at 763 (citing *Caldwell v. Miller*, 790 F.2d 589, 600 (7th Cir. 1986)).

Franklin had the ability to exercise in his cell at any time and outside his cell one hour per day. When a detainee is in a segregation cell at the Kenosha County Jail, he is allowed one hour out of cell per day. (Preston Aff., ¶ 54.) During that one hour per day, detainees may clean their cell, shower, make telephone calls, and walk in the 20 foot by 6 foot open area adjacent to the segregation cells. (Preston Aff., ¶ 56.) Additionally, detainees in segregation cells are permitted to do push ups and sit ups, and also jog in place, in their cells. (Preston Aff., ¶ 57.) All of this constitutes freedom to engage in recreation and defeats Franklin's claim.

15

Further, Franklin's own reports to medical professionals indicate that he was not deprived of all opportunity to exercise. Franklin saw the jail doctor on two occasions, March 24, 2005, and May 31, 2005. (Medley Aff., ¶¶ 6-8, Ex. ZZ.) He did not mention a lack of exercise during either visit. *Id.* In fact, on May 31, 2005, Franklin defended his refusal of diabetes medication and told the doctor, "I take care of my DM by exercising." (Medley Aff., ¶ 7, Ex. ZZ.)

As a matter of law, the limitations on detainees in segregation cells at the Kenosha County Jail do not rise to the level of a constitutional violation. The court will grant summary judgment in favor of defendants on this claim.

### Excessive Cell Illumination

Franklin asserts that the defendants employ "sleep deprivation tactics" and "flood the cells with extremely bright light." Franklin filed three grievances in which he complained about constant cell illumination. On April 19, 2005, the plaintiff included the following complaint in a grievance addressing a number of issues: "This jail is also practicing sleep deprivation tactics. By refusing to turn off the lights in x-block. The bright blinding light stays on 24 hrs. a day." (Medly Aff., Ex. HHH.) Although Franklin did not specify the time and date of the occurrence, nor the jail staff involved, it was implicit that the violation was continuous. Jail staff did not ask for clarification of Franklin's grievance; they simply did not respond to it. The defendants argue that Franklin did not appeal the response, even though there was no procedure at the time for a detainee to appeal a grievance response.

16

On May 26, 2005, Franklin submitted a grievance with an extensive narrative that included the following statement: "I suffer sleep deprivation because I'm flooded with bright lights 24 hours a day." (Preston Aff., ¶ 69, Ex. PPPP.) Jail staff responded that the grievance was written on the wrong and outdated form, provided Franklin with a copy of the correct form and advised him to resubmit his grievance. He did not.

Franklin once again included a reference to "the constant flood of bright lights" as part of the grievance he filed on July 5, 2005. (Preston Aff., ¶72, Ex. QQQQ.) The response by jail staff addressed only the other issues raised in Franklin's grievance, about clean sheets and uniforms. (Preston Aff., ¶73, Ex. QQQQ.) Franklin did not appeal this response. (Preston Aff., ¶74.) Although Franklin's second and third attempts did not exhaust a claim regarding the illumination of his cell, jail staff's lack of response to his April 19, 2005, grievance about cell illumination, coupled with the unavailability of a procedure for appeal at that time, constitutes exhaustion of his administrative remedies. The defendants were certainly on notice that Franklin had complaints about the constant illumination in his cell. The court will consider this claim on its merits.

A condition of an inmate's confinement such as constant illumination violates the inmates constitutional rights if it denies the inmate "the civilized measure of life's necessities," *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981), and is the result of deliberate indifference by prison officials. *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991).

It is undisputed that the daytime lights at the Kenosha County Jail use 34-watt fluorescent bulbs, and the nighttime lights use 15-watt fluorescent bulbs. (Preston Aff., ¶

59.)  Less than half the number of daytime bulbs are employed during the nighttime. (Preston Aff., ¶ 61.)  Cell lights throughout the jail, including segregation cells, are significantly dimmed between 10:00 p.m. and 5:30 a.m.  (Preston Aff., ¶ 62.)  The brighter cell lights are only employed between 10:00 p.m. and 5:30 a.m. if a matter of security or safety requires it; this is not a frequent occurrence.  (Preston Aff., ¶ 63.)  The nighttime lights are only as bright as is necessary for jail staff to monitor the safety and security of the inmates and staff, including to make sure that inmates do not harm themselves or others. (Preston Aff., ¶ 64.) The defendants have submitted undisputed evidence showing that the jail's nighttime lighting is maintained at a level compliant with the Wisconsin Administrative Code requirements that there be sufficient light to conduct security checks.  (Preston Aff., ¶ 76.)  The defendants argue, consistent with the policy underlying the administrative code provisions, that maintaining total nighttime cell darkness would undermine the safety and security of the inmates and staff.  (Preston Aff., ¶ 75.)

In *King v. Frank*, 371 F.Supp.2d 977, 985 (W.D. Wis. 2005), the court granted summary judgment on a claim regarding constant illumination of a cell after finding that the plaintiff did not satisfy his burden to show that he suffered serious harm or was deprived of a basic human need.  Here, constant illumination by 15-watt bulbs did not subject Franklin to any risk of serious harm or deprive him of a basic human need.  Like the plaintiff in *King*, Franklin presented no evidence of medical or psychological problems resulting from the light in his cell.  *See id; see also Dixon v. Godinez*, 114 F.3d 640, 645 (7th Cir. 1997)(holding that prisoner's "conclusory allegations, without backing from medical or scientific sources" that

18

inadequate ventilation cause him respiratory problems were insufficient to overcome summary judgment on Eighth Amendment claims).

In any event, Franklin has not shown that the conditions in his cell were objectively substandard. "[E]xtreme deprivations are required to make out a conditions-of-confinement claim," *Hudson v. McMillian*, 503 U.S. 1, 9 (1992), and 24-hour lighting with low-watt fluorescent bulbs does not objective constitute an "extreme deprivation." *See Doe v. Welborn*, 110 F.3d 520, 524 (7th Cir. 1997).

Based on the undisputed facts, a reasonable fact finder could not conclude that the defendants violated Franklin's constitutional rights. The court will grant summary judgment in favor of the defendants on this claim.

### Extreme Temperatures

Franklin complains that he was subjected to extreme temperatures while a detainee in the Kenosha County Jail. In a grievance dated June 10, 2005, Franklin stated:

> Because I signed a release giving the medical dept. access to my medical records from the W.D.O.C. you people know that I have nerve damage in my hands and feet. Now you subject me to extreme cold temp. These extremely cold temperatures cause me over-whelming pain. I need to be put somewhere with warmer temperatures. Its just too cold in this cell block. [sic]

(Preston Aff., ¶ 82, Ex. RRRR.) The response from jail staff related primarily to the treatment of Franklin's alleged nerve damage. The responding officer also stated, "I have taken a temperature reading of your housing unit and I will have maintenance bump it up a few degrees." (Preston Aff., ¶ 83, 84, Ex. RRRR.) Franklin did not appeal from this grievance response. (Preston Aff., ¶ 85, Ex. RRRR.)

19

On June 30, 2005, Franklin filed another grievance, in which he argued that it was too "cold in the cell blocks" and that the "extreme temperatures" caused him "unnecessary pain." (Preston Aff., ¶ 86, Ex. SSSS.) Jail staff dismissed the complaint on July 1, 2005, and advised Franklin to "[l]et the Correctional Officer in charge of your zone know that it is too cold. The message will be relayed to the building maintenance department who will in turn make the necessary adjustments to the HVAC." (Preston Aff., ¶ 87, Ex. SSSS.) Franklin filed an undated appeal, in which he stated:

> This is an appeal of the grievance filed on 7-1-05 and answered on that same day. First and foremost, this is and has been an ongoing situation. All officers who have worked this zone have consistently been told about the cold temperatures and have consistently responded that the cold is part of level 1 classification. Also it is known that as a result of the nerve damage that I suffer. And this jail's refusal to treat me for that nerve damage, the extreme temperatures cause me severe pain. As such, these cold temperatures are a violation of my 8th Amendment rights. I need warmer temperatures.

(Preston Aff., ¶ 88, Ex. TTTT.) Jail staff denied the appeal, citing insufficient information to base a complaint, because Franklin failed to list the temperature about which he was complaining. (Preston Aff., ¶ 88, Ex. TTTT.) Franklin exhausted his administrative remedies, and the court will consider this claim on its merits.

Prisoners have a right under the Eight Amendment to be free from extreme hot and cold temperatures. *Shelby County Jail Inmates v. Westlake*, 798 F.2d 1085, 1087 (7th Cir. 1986). To assess whether cold cell temperatures constitute cruel and unusual punishment, courts must consider factors including the severity of the cold; its duration; whether the prisoner has alternative means to protect himself from the cold; the adequacy of

20

such alternatives; as well as whether he must endure other uncomfortable conditions as well as cold. *Dixon*, 114 F.3d at 644.

Here, the court need not assess whether cold cell temperatures constitute cruel and unusual punishment because the plaintiff has not presented evidence that he was subjected to cold temperatures while an inmate at the Kenosha County Jail. Franklin submitted no evidence regarding the temperature in his cell; nor did he present evidence to show that the weather was especially cold during his incarceration.[4] In contrast, the defendants have presented undisputed evidence that Franklin was not subjected to "extreme" temperatures. The temperature range of each zone, including X-block segregation and non-segregation units, was kept between 67 and 74 degrees. (Preston Aff., ¶¶ 77-80.) The jail takes temperature readings, and the building maintenance department makes adjustments when the readings are below 67 degrees or above 74 degrees. (Preston Aff., ¶ 78.) Nor did he dispute the defendants' affidavits stating that the temperature in his cell was maintained between 67 and 74 degrees.

Without evidence that Franklin was subjected to extreme temperatures, the court cannot find that such temperatures constitute cruel and unusual punishment. Even if Franklin had presented evidence documenting cold temperatures, he could not show that they constituted a sufficiently serious deprivation. To make out a constitutional claim based on jail conditions, a detainee must show that he has suffered an objectively, sufficiently serious

---

[4] The court notes that Franklin made his complaints about extremely cold cell temperatures in May and June. It seems unlikely that the jail could be cold enough to rise to the level of a constitutional deprivation at that time of year.

21

injury, and that prison officials inflicted the injury with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Franklin has made no such showing. In fact, he had appointments with the jail doctor on both March 24, 2005, and May 31, 2005, but he did not complain of nerve pain due to extreme temperatures at either of those times. (Medley Aff., ¶ 9, Ex. ZZ.) The court will grant summary judgment in favor of the defendants on this claim.

### Due Process - Medications

Franklin alleges that the defendants violated his due process rights by charging him for medications he did not request or receive. Franklin filed five grievances regarding charges for medications and/or medical treatment. Four of the grievances were filed after the Kenosha County Jail instituted a procedure for appeals, but Franklin failed to appeal. Therefore, Franklin failed to exhaust his administrative remedies regarding the grievances he filed on May 31, 2005, June 14, 2005, June 24, 2005 and June 30, 2005. Summary judgment will be granted in favor of the defendants on those claims due to Franklin's failure to exhaust his administrative remedies.

Franklin did exhaust his administrative remedies on a grievance he filed on May 9, 2005, regarding charges for medications. (Preston Aff., ¶ 100, Ex. FFFF.) In that grievance, he challenged a May 6, 2005, receipt showing his account was charged $27.00. (Preston Aff., ¶ 100, Ex. FFFF.) Franklin states:

> I don't owe you people any money. I did not request any medical services or medication. As such, you cannot force me to take pills that I never requested. And you cannot force me to

22

> pay for medication that I never asked for. I want the [$27] returned to my account. I do not intend to pay this extortion fee. And you people need to leave my account alone.

(Preston Aff., Ex. FFFF.) Jail staff responded, "The charges are for your diabetic supplies and your medications." (Preston Aff., Ex. FFFF.) The defendants argue that Franklin failed to appeal the response to this grievance, but, at the time of this grievance and the response, there was no procedure for a detainee to appeal a grievance decision. (Preston Aff., ¶ 8.) As a result, this constitutes an exhaustion of the administrative remedies available to Franklin before bringing this claim.

The due process clause of the Fourteenth Amendment requires "some form of hearing" before the owner is deprived of a protected property interest. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433 (1982) (citing *Board of Regents v. Roth*, 408 U.S. 564, 570-71 (1972)). However, Franklin was not deprived of a property interest; he received medications in exchange for the prescribed co-pay per medication. During the time Franklin was incarcerated at the Kenosha County Jail, the co-pay was $3.00 for a 30-day supply of a prescription or over the counter medication. (Medly Aff., ¶ 10.) The $27.00 charge about which Franklin complains paid the co-pays for nine prescription medications. (Medley Aff., Ex. GGGG-5.) Detention Division Account Specialist Donna Debree received a Medical Services Order Form showing a $27.00 charge for nine prescriptions and entered it on Franklin's Resident Receivable Report on May 6, 2005. (DeBree Aff., ¶¶ 21-22, Ex. YYY; Medley Aff., Ex. GGGG-5.)

23

The defendants have not indicated which month Franklin was to take the medications for which he was charged on May 6, 2005. However, Franklin took his medications at least some days during each month of his incarceration at the Kenosha County Jail. (Medley Aff., ¶ 28, Ex. DDD.) For prescription medications, there is no refund where the inmate took some of the pills of a 30-day monthly supply, even if the inmate did not take all of the pills in the supply. (Preston Aff., ¶ 108; Medley Aff., ¶ 21.) The undisputed evidence shows that the funds were taken from Franklin's account to pay for medications. As such, Franklin was not deprived of a property interest, and his due process claim fails. The court will grant summary judgment in favor of the defendants on this claim.

### Due Process - Written Reports

Franklin also asserts that the defendants violated his due process rights when defendant Johnson prevented Franklin from seeing copies of his disciplinary reports and when defendant Johnson presided over the plaintiff's May 26, 2005, disciplinary hearing and the resulting appeal.[5] Under *Wolff v. McDonnell*, 418 U.S. 539, 565 (1974), the following procedural protections are required when a liberty interest is at stake: (1) advance written notice of the disciplinary charges; (2) an opportunity to call witnesses and present documentary evidence; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action.

---

[5] The defendants do not argue that Franklin failed to exhaust his administrative remedies relative to this claim, and the court therefore will address the claim on its merits.

24

The court will assume that temporary placement in disciplinary confinement deprived Franklin of a liberty interest. The evidence submitted by the defendants shows that they provided Franklin with the requisite due process relative to his May 26, 2005, disciplinary hearing. Written notice of charges initialed by a staff member were provided to Franklin 24 hours prior to the disciplinary hearing. (Preston Aff., ¶ 139, Ex. SSS.) Franklin has presented no evidence to contradict this. Sgt. Johnson conducted a hearing May 26, 2005, during which Franklin admitted to cursing at the officer. (Preston Aff., Ex. SSS.) Following the hearing, Sgt. Johnson prepared a written Disciplinary Hearing Report detailing the charges against Franklin and their disposition, including the evidence relied upon in reaching the decision. (Preston Aff., Ex. SSS.)

The Disciplinary Hearing Report provides: "You may appeal the results of this hearing to the Facility Administrator or his designee within ten days of this hearing. You must complete an **Inmate Request Form** and address it to the Hearing Officer. It will then be forwarded for review." (Preston Aff., Ex. SSS.)(Emphasis in original.) Franklin filed an appeal and argued that this was not his second offense and that he received a consecutive sentence due to the mistake. (Preston Aff., Ex. UUU.) Sgt. Johnson responded to the appeal on May 31, 2005, and substantively answered Franklin's question. (Preston Aff., Ex. UUU.) Sgt. Johnson was the shift supervisor on May 31, 2005, and it was therefore appropriate for him to respond to Franklin's appeal. (Preston Aff., ¶ 140-42, Ex. VVV.) Nothing in the Kenosha County Sheriff's Department Policy & Procedures precludes Sgt. Johnson from

25

conducting Franklin's disciplinary hearing and also responding to Franklin's written appeal. (Preston Aff., Ex. VVV.)

The defendants complied with the requirements of *Wolff* and did not violate Franklin's due process rights regarding his May 26, 2005, disciplinary hearing or the related appeal. Consequently, the court will grant summary judgment in favor of the defendants as to this claim.

### Franklin's Eighth Amendment Medical Treatment Claim

Franklin makes a claim under the Eighth Amendment alleging deliberate indifference to the treatment of his nerve damage to his hands and feet. Franklin exhausted the administrative remedies available to him regarding this claim. Although he failed to appeal a June 10, 2005, grievance and response, Franklin had earlier exhausted his administrative remedies with respect to his April 19, 2005, grievance. At that time, there was no procedure for appeal. Therefore, the April 19, 2005, grievance and response constitutes exhaustion, and the court will consider the claim on its merits.

To establish liability under the Eighth Amendment, a prisoner must show: (1) that his medical need was objectively serious; and (2) that the official acted with deliberate indifference to the prisoner's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001); *see also Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Zentmyer v. Kendall County, Illinois*, 220 F.3d 805, 810 (7th Cir. 2000). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity

26

for a doctor's attention." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)).  A prison official acts with deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or safety."  *Farmer*, 511 U.S. at 837.  Prison officials act with deliberate indifference when they act "intentionally or in a criminally reckless manner."  *Tesch v. County of Green Lake*, 157 F.3d 465, 474 (7th Cir. 1998).  A finding of deliberate indifference requires evidence "that the official was aware of the risk and consciously disregarded it nonetheless."  *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001) (citing *Farmer*, 511 U.S. at 840-42).

Although Franklin's neuropathy may not have been diagnosed separately from his diabetes, the court will assume that both Franklin's diabetes and his related neuropathy in his hands and feet are serious medical needs.  However, Franklin's medical records, his grievances and the responses of jail staff do not show deliberate inference.  Rather, they show great concern, plans for treatment and repeated, earnest attempts to get Franklin to comply with the treatment regimen.  They told him repeatedly what to do to relieve his pain: take his diabetes medications.  Franklin refused.  The undisputed evidence shows that the defendants were not deliberately inference to Franklin's serious medical need.  Therefore, the court will grant summary judgment in favor of the defendants.

**Franklin's First Amendment Legal Mail Claim**

Franklin alleges that the defendants violated his First Amendment rights when a piece of his legal mail was opened on May 29, 2005.  In a grievance dated the same day,

27

Franklin complained that a letter from Judge Crabb was opened outside his presence. (Preston Aff., ¶ 184, Ex. U.) The defendants dismissed the complaint and responded: "The c/o in question stood at your cell door window and announced to you that you had received mail. The c/o then opened the letter in question to check for contraband in full view of you from where you were located in the cell." (Preston Aff., Ex. U.) Franklin's grievance was filed after May 10, 2005, so there was a process in place for an inmate to appeal the response. The defendants do not present any record of an appeal by Franklin, but its absence in the record on summary judgment does foreclose its existence. The defendants do not argue that Franklin failed to exhaust his administrative remedies on this particular claim. The court will therefore consider the claim on its merits.

The plaintiff's own grievance, which identifies the correspondence as coming from Judge Crabb, undermines his ability to state an actionable claim. Correspondence from a court to a litigant is public record and the opening of such mail outside of the inmate's presence does not violate the constitution. *Martin v. Brewer*, 830 F.2d 76, 78 (7th Cir. 1987). Furthermore, isolated mail errors are not actionable, as they do not state a First Amendment claim. *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999). Franklin's claim is based on the opening of mail from a court to a litigant and it relates to an isolated mail event. He does not assert an actionable First Amendment claim for the defendants' opening his mail on May 29, 2005. The court will grant summary judgment in favor of the defendants.

28

# VI. QUALIFIED IMMUNITY

The defendant allege they are entitled to the defense of qualified immunity on each of the claims by each of the plaintiffs. The court need not reach an analysis of qualified immunity in this case because it will grant summary judgment in favor of the defendants on all of the plaintiffs' claims based either on exhaustion or the merits of the claim.

# VII. CONCLUSION

**IT IS THEREFORE ORDERED** that the motion for summary judgment by Officer Shimkus, Sgt. Johnson, David Beth, Officer Roger, Captain Preston, Health Service Unit (Docket # 168) is **granted**.

**IT IS FURTHER ORDERED** that the motion for summary judgment by Nurse Dale (Docket # 188) is **granted**.

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 4th day of September, 2008.

**SO ORDERED,**

*s/ Rudolph T. Randa*

**HON. RUDOLPH T. RANDA**
**Chief Judge**

29